IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **BASHIRU JIMOH,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-1022 |
| **COSTCO WHOLESALE CORPORATION,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this premises liability case, Plaintiff Bashiru Jimoh seeks damages for injuries sustained when he slipped on liquid near the bathrooms and drinking fountains at a store in Lanham, Maryland operated by Defendant Costco Wholesale Corp. ("Costco"). Costco moves for summary judgment, arguing that Jimoh has failed to provide *prima facie* evidence that Costco failed to take reasonable care to discover and rectify the unsafe condition. ECF No. 31. The Motion is fully briefed, Def.'s Mem. ECF No. 31-1; Pl.'s Opp'n, ECF No. 32; Def.'s Reply, ECF No. 32, and no hearing is necessary, *see* Loc. R. 105.6 (D. Md.). Because Jimoh has failed to produce any evidence that Costco was responsible for the liquid being on the floor or had actual or constructive knowledge of it, I will grant the Defendant's Motion.

## Background

While shopping at the Woodmore Town Center Costco Warehouse in Lanham, Maryland on August 7, 2014, Jimoh used the store restroom. Def.'s Mem. 1; Pl's Opp'n ¶ 1; Jimoh Dep. 36:22–37:4. Upon exiting the restroom, he began to return to the retail area but took an abrupt

detour to use the drinking fountain. *Id.* at 42:22–43. As he walked towards the drinking fountain, he slipped (but did not fall) on a patch of liquid roughly 1.5 times the size of an 8.5- by 11-inch piece of paper that he had not seen on the floor up to that point. *Id.* at 43:5–44:6, 63:22. The store had not posted any caution signs alerting customers to the floor's condition. *Id.* at 47:19–20. Jimoh regained his balance by spreading his legs apart, but suffered injuries to his groin, knee, thigh, hip, and chest by breaking the fall. *Id.* at 44:7–11, 45:11–12. A Costco employee who walked out of the restroom shortly after Jimoh slipped wiped up the liquid, *id.* at 44:15–45:2, and the store supervisor gave Jimoh an incident report to fill out, *id.* at 68:2–12, The next day, Jimoh's physician, Dr. Sagar Nootheti, examined him and ordered physical therapy three times a week. Pl.'s Opp'n Ex. 2, at 11–13, ECF No. 32-3. During two follow-up visits, Dr. Nootheti ordered continued physical therapy and prescribed prescription-strength Tylenol, an opioid, and a muscle relaxant. *See id.* at 14–15. By late October, Jimoh's symptoms had improved, and he was discharged. *Id.* at 16–17.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10

(1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Discussion

In order to bring a negligence claim in Maryland, the plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty." *Lloyd v. Gen'l Motors Corp.*, 915 A.2d 256, 270–71 (Md. 2007) (quoting *Valentine v. On Target*, 727 A.2d 947, 949 (Md. 1999)). In premises liability cases, the duty of care owed by the owner or occupier of a premises varies depending on his or her relationship with the person entering the premises. *Casper v. Chas. F. Smith & Son, Inc.*, 560 A.2d 1130, 1333 (Md. 1989). "[T]he proprietor of a store owes a duty to his customers to exercise ordinary care to keep the premises in a reasonably safe condition, and will be liable for injuries sustained in consequence of a failure to do so." *Rawls v. Hochschild, Kohn & Co.*, 113 A.2d 405, 407 (Md. 1955). But a store proprietor "is not an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the proprietor arises merely from a showing that an injury was sustained in his store." *Mouldon v. Greenblet Consumer Servs., Inc.*, 210 A.2d 724, 725 (Md. 1965). Thus, in order to prove that Costco breached its duty of care, Jimoh bears the burden of demonstrating "[1] that a dangerous condition existed, . . . [2] that [Costco] 'had actual or constructive knowledge of it, and [3] that that knowledge was gained in sufficient time to give the [store] the opportunity to remove it or to warn [Jimoh].'" *Rehn v. Westfield Am.*, 837 A.2d 981, 984 (Md. 2003).

Jimoh has not produced any evidence that Costco actually knew about the liquid that caused him to slip. *See* Jimoh Dep. 55:18–19 ("I'm not an employee. I don't know how the water got there."); *id.* at 57:12–14 (Q: "Did anybody from Costco say anything to you about how that substance came to be on the floor?" A: "No. . . ."). He attempts to argue that Costco had actual knowledge of the hazard by characterizing the drinking fountain itself, rather than the liquid, as a hazard, Pl.'s Opp'n ¶¶ 15, 21, and he faults Costco for "not hav[ing] staff present *at all times* to seek out if there was any water on the floor and to wipe water on the floor when the floor became wet," *id.* ¶ 12 (emphasis added).[1] Of course Costco had actual knowledge of its drinking fountain's existence, but a normal, fully functional drinking fountain is not an inherently dangerous object, and Jimoh identifies no uniquely dangerous properties of this particular drinking fountain. And the constant vigilance that Jimoh apparently expects of Costco is the hallmark of a strict-liability regime, not the ordinary care that stores owe to their customers. Jimoh's claim therefore depends on his ability to prove that Costco had constructive knowledge of the liquid.

Constructive knowledge can be ascribed to a proprietor if the plaintiff can "show[] that the condition existed for such a length of time sufficient to permit a person under a duty to discover it if he had exercised ordinary care." *Rawls*, 113 A.2d at 409. The requirement that a plaintiff provide time-on-the-floor evidence ensures proof "that the defendant's negligence was the proximate cause of the plaintiff's injury," because, without it, "the storekeeper would be potentially liable even though there is no way of telling whether there was anything [the store]

---

[1] Although Jimoh assumes that the drinking fountain was the source of the liquid, he produces no evidence supporting that conclusion, and his estimation that the liquid was eight feet away from the fountain, Jimoh Dep. 60:15–61:2, and closer to the restroom than to the fountain, *id.* at 61:9–11, undermines his assumption. In any event, Jimoh fails to satisfy his burden of production even if it is assumed that the liquid came from the drinking fountain.

could have done" to prevent the injury. *Maans v. Giant of Maryland, L.L.C.*, 871 A.2d 627, 639 (Md. Ct. Spec. App. 2005). A plaintiff cannot demonstrate that sufficient time existed through "pure conjecture" rather than "reasonable inference." *Moulden*, 210 A.2d at 726 (declining to infer that a string bean had been on the floor for "more than a few moments" from its mashed and dry appearance). And "[e]vidence that a foreign substance causing a fall . . . looked dirty or otherwise appeared to have been there for a long time . . . generally has been held not to support a finding that the substance was there long enough to be discovered and remedied by the storekeeper. *Burwell v. Easton Mem'l Hosp.*, 577 A.2d 394, 396 (Md. Ct. Spec. App. 1990) (declining to infer that lettuce had been on the floor a long time based on its wilted and discolored appearance).

Regardless of how long the liquid was on the floor, Jimoh argues that Costco did not satisfy its duty of care because, according to him, the store "had no operating procedures or standards in place to see that the area around the two water fountains remained dry and did not become dangerous to its" customers. Pl.'s Opp'n ¶ 13. On the contrary, Costco has produced evidence that store "employees maintain daily logs and records of . . . hourly floor walks[ and] safety inspections" and that Costco employees conducted a floor walk on the same day as the accident and before it occurred. Def.'s Resp. to Pl.'s Interrog. No. 10, Def.'s Mot. Ex. B., ECF No. 31-3. But even if the store had failed to inspect for hazards prior to the accident, this would not dispense of Jimoh's obligation to prove that inspections prior to the accident would have identified the hazard in time for the store to prevent the accident. *See Maans*, 871 A.2d at 632 (assuming breach of duty to provide reasonable inspections but finding lack of time-on-the-floor evidence "fatal" to plaintiff's argument).

Jimoh cannot satisfy the time-on-the-floor element of his burden of production because he admits that he can only speculate as to how long the liquid was on the floor. He infers from the dirtied color of the liquid—which he perceived to be water—and from dryness along the perimeter of the spill that it had been on the floor for an extended period of time. Jimoh Dep. 52:7–12, 53:5–13. But Jimoh admits that he does not know if the floor was already dirty when the liquid spilled, *id.* 53:14–18, or even if the liquid was in fact water, *id.* at 54:22–55:1. Indeed, Jimoh acknowledges that his conclusions about the amount of time the liquid was on the floor amount to "speculation," *id.* at 55:8, and that he really has "no idea" how long the liquid was on the floor, *id.* at 56:8. Jimoh's time-on-the-floor evidence is just the sort of conjecture that failed to satisfy plaintiffs' burden of production in *Moulden* and *Burwell*.

From the evidence in the record, neither Jimoh nor a reasonable jury could rule out the possibility that the liquid was spilled immediately prior to his accident, leaving insufficient time for Costco to detect and correct the hazard through exercise of ordinary care. Assuming that the liquid was water, preexisting dirt on the floor may have accounted for its color, and the edges of the spill might have dried by being absorbed by a customer's shoes or clothing immediately after the spill rather than from evaporation. Accordingly, Jimoh has failed to produce evidence sufficient to establish that Costco had constructive knowledge of the liquid that caused him to slip.

## Conclusion

Because the record lacks evidence that Costco had constructive knowledge of the condition that caused Jimoh's injury, a reasonable jury cannot conclude that the store breached its duty of care. For that reason, Costco's Motion for Summary Judgment shall be granted.

A separate Order follows.

Dated: <u>January 23, 2017</u>                              <u>        /S/           </u>
                                                            Paul W. Grimm
                                                            United States District Judge

jlb